UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRIE BEAVERS,

                         Plaintiff,           Civil Action No. 18-11688
                                            Honorable Gershwin A. Drain
                                            Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                         Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 13]

Plaintiff Terrie Beavers ("Beavers") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #11, #13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Beavers is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Beavers's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.     REPORT

### A.     Background

Beavers was 60 years old at the time of her alleged onset date of May 14, 2015, and at 5'5"

tall weighed approximately 260 pounds during the relevant time period.  (Tr. 51, 71).  She reported

previous work in "follow up,"[1] and a tax preparer for H&R Block.  (Tr. 45-48, 81).  She alleges

disability primarily as a result of type I diabetes, right leg vein issues, left hand issues, high blood

pressure, and a blood disorder.  (Tr. 71).

After Beavers's applications for DIB and SSI were denied at the initial level on June 3,

2016 (Tr. 83), she timely requested an administrative hearing, which was held on August 2, 2017

before ALJ Therese Tobin.  (Tr. 39).  Beavers, who was represented by attorney Larry R. Maitland,

II, testified at the hearing, as did vocational expert Zachary Matthews.  (Tr. 39-68).  On December

4, 2017, the ALJ issued a written decision finding that Beavers is not disabled under the Act.  (Tr.

28-34).  On April 13, 2018, the Appeals Council denied review.[2]  (Tr. 1-3).  Beavers timely filed

---

[1] Beavers described "follow up" in her testimony as "an off line position.  I unload trucks, I worked up in the balcony, and I scheduled tables to run substrate.  If they needed a part, I had to go look for the part and see what was shipped in, and how it was shipped out, and what time to expect it there."  (Tr. 46).  Further, she stated that she "stocked things, and I had to weigh them up so they could get the correct balance, weight . . ." and she would "put a tag on so they know how many parts in that basket, and what [] label."  (*Id*.)  The job required her to lift "from ten to 50 pounds depending on what pallet I had to unload off the truck and put it on another pallet."  (Tr. 45).

[2] In her motion, Beavers alleges that a letter from her counsel is not in the transcript.  (Doc. #11 at 7).  Specifically, she states that updated medical records from Dr. O. William Brown of Beaumont Medical Group were submitted to the Appeals Counsel with a letter from her attorney—which is the item not included in the transcript—requesting that the Appeals Counsel set aside its decision to uphold the ALJ's decision.  (*Id*.)  The reasons that Beavers's attorney's letter were not made part of the transcript are not entirely clear.  However, the medical records themselves are in the record (Tr. 7-18) and Beavers does not argue that inclusion of her attorney's letter of these records would impact the outcome.  (Doc. #11 at 7).  Moreover, "evidence submitted to the Appeals Counsel after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  However, it can be

for judicial review of the final decision on May 30, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Beavers's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.  The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

---

considered to determine whether Beavers is entitled to a "Sentence Six" remand. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993), and as such, it will be addressed as set forth below.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Beavers is not disabled under the Act.  At Step One, the ALJ found that Beavers has not engaged in substantial gainful activity since May 14, 2015 (the alleged onset date).  (Tr. 30).  At Step Two, the ALJ found that she has the severe impairments of status-post bilateral knee arthroplasty surgeries, bilateral leg vein obstruction, bilateral plantar fasciitis, left thumb arthritis, history of brain tumor, diabetes, hypertension, anemia, dyslipidemia, and obesity.  (*Id.*).  At Step Three, the ALJ found that Beavers's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 31).

The ALJ then assessed Beavers's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations:  Beavers would require a sit or stand option without disturbing the workplace, she would require an assistive device to ambulate during the workday, she could never kneel, crouch, crawl, or climb ladders ropes, or scaffolds.  She could occasionally climb ramps or stairs, she should avoid all exposure to unprotected heights or moving mechanical parts, and she could frequently balance or stoop.  (Tr. 31).

4

At Step Four, the ALJ found that Beavers is capable of performing her past relevant work as a tax preparer. (Tr. 33). As a result, the ALJ concluded that Beavers is not disabled under the Act. (Tr. 34).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See id.* at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing

in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

   **D.     Analysis**

   In her motion for summary judgment, Beavers argues that: (1) the ALJ did not properly evaluate Beavers's physical restrictions and reports of pain; (2) the ALJ did not give proper weight to Beavers's treating physician's opinions; (3) the ALJ erred when she did not order a consultative physical examination; (4) the ALJ erred when she did not "grid" Beavers's RFC; and (5) the ALJ failed to meet her burden of proof at step five. (Doc. #11 at 2-3). Each argument is addressed below.

   *1.     The ALJ's Evaluation of Beavers's Subjective Complaints of Pain*

   In her motion, Beavers argues that the ALJ failed to properly apply the two-prong test to evaluate a claimant's assertion of pain. (Doc. #11 at 10). For the reasons set forth below, the Court disagrees.

   20 C.F.R. §404.1529(a) states that an individual's statements regarding "pain or other symptoms will not alone establish that [she is] disabled." The Sixth Circuit has developed a two-prong test for evaluating a claimant's assertions of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citations omitted). Beavers also cites to Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (July 2, 1996) in this regard.

To begin with, the Sixth Circuit has held that ALJs are in the best position to evaluate a claimant's subjective complaints because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, such an evaluation will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."). The ALJ is not required to simply accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters*, 127 F.3d at 531. Rather, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must evaluate the claimant's symptoms by considering "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).

In her decision, the ALJ properly set forth the two-part regulatory standard for evaluating a claimant's subjective complaints. (Tr. 31). And, in considering Beavers's subjective allegations, the ALJ discussed her hearing testimony and other statements regarding her symptoms, her medication and other methods used to treat pain, her treatment history, and her daily activities.

(Tr. 32-33).  All of these were proper considerations, and constitute substantial evidence in support of the ALJ's decision.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  First, the ALJ discussed recognized Beavers's right knee and foot pain, and her professed need to elevate her legs during the day.  (Tr. 32).  In so doing, the ALJ went on to evenly discuss the medical records, noting that they "fail[] to provide strong support for [Beavers's] allegations of disabling symptoms and limitations . . ."  For instance, while the ALJ noted a June 2016 doppler study of Beavers's legs which showed lower extremity claudication secondary to atherosclerotic obstructive disease, the placement of a catheter in the right superficial femoral artery in June 2017, and her knee surgeries in 2005 and 2015, she also noted that at a "follow-up treatment, [Beavers] reported she did not have any pain in her right foot and she could ambulate without difficulty," and that Beavers "presented with full foot range of motion and intact foot sensation."  (Tr. 32, 734, 881-83, 891-92).  The ALJ also noted that Beavers did well after her knee surgery, and only reported knee pain when she was performing physical therapy exercises.  (Tr. 32, 348-50).  The cited records support the ALJ's finding.  Numerous other records similarly support the ALJ's finding.  (See *e.g.*, Tr. 348-50 (noting that Beavers reported no difficulty ambulating up and down stairs, had no swelling in her lower extremities, and that her implants were in satisfactory position); 415, 428, 431 (normal examinations of the feet); 596-99 ("doing well and states pain controlled" with full range of motion in all extremities); 694 (normal lower extremities); 716 (normal gait and lower extremity strength); 738 (normal motor strength and gait, and no numbness or tingling); 916 (right foot pain "episode" "resolved" the next day after which Beavers had full range of motion and sensation in her right foot); 918 (noting "mild rest pain" with full range of motion and sensation in the right foot); 250 (ambulating without discomfort); 608 (oral analgesics provide good relief).

The ALJ also noted that Beavers underwent hand surgery in March 2016 to treat her left thumb basal joint arthritis.  (Tr. 32, 678-80).  However, the ALJ also noted that she had reported only intermittent left hand pain, and that her doctor found she was doing well after the procedure.  (Tr. 32, 687, 690).  And, the ALJ noted Beavers's testimony that she can use her hands and can pick up a coin in front of her.  (Tr. 32, 59-60).

Additionally, the ALJ observed that Beavers's allegation of disabling pain was inconsistent with her activities of daily living (Tr. 32-33), which was also appropriate.  Specifically, the ALJ noted Beavers's testimony and reports that she is able to drive a car, prepare meals, clean her home, wash dishes, dust, do laundry, go shopping, and socialize on the phone.  (Tr. 32, 51-54, 212-14).  *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  The Court also notes that in her function report, Beavers wrote that she took care of a great-niece at home.  (Tr. 212).  In the same function report, when asked whether any of her medications caused her to experience side effects, Beavers answered in the negative.  (Tr. 218).

In sum, in evaluating Beavers's subjective complaints and the effects of her impairments, the ALJ fairly and properly considered the record evidence, including Beavers's medical records, statements, and activities of daily living.  (Tr. 32, 51-53).  The Court finds no reason to disturb the ALJ's findings because she observed Beavers firsthand, and her assessment is supported by substantial evidence in the record.

## 2. Beavers's "Treating Physician Rule" Argument Lacks Merit

Beavers next contends that the ALJ erred by failing to follow the "treating physician rule." This argument has no merit whatsoever.  After describing the rule's basic requirements[3], Beavers

---

[3] The well-established treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

wrote only the following as her "position": "[Beavers] submits that this [*i.e.*, following rule] was not done in accordance with the Regulations and opinions and restrictions advanced by [her] doctors were generally ignored, specifically those related to leg elevation." (Doc. #11 at 12). But Beavers does not identify a specific treating source medical opinion that the ALJ overlooked or improperly weighed. (*Id.*). Consequently, she has waived this argument. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to… put flesh on its bones."). In her reply brief, Beavers writes that there is no "medical source statement" in the record, but that "a medical source statement, or at a minimum the likely recommendations of a medical professional can be implied from the evidence in the file." (Doc. #14 at 2). Later in the same brief, she similarly writes, that between unspecified "medical records from [her] doctors, [her] testimony regarding her doctors' recommendations to elevate, and her ultimate amputation," she has provided an "adequate basis for surmising a treating physician's opinion." (Doc. #14 at 3). But Beavers cites no case law or regulation from which the Court can "imply" or "surmise" a treating physician opinion, or any particular physician-imposed restriction that the Court must credit (or even consider under the relevant treating physician factors) and, as noted above, *see supra* at 8, the ALJ did fairly discuss her treating physicians' records.

---

case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

*3. The ALJ's Decision Not to Order a Consultative Examination for Beavers's Physical Claims is Not a Reversible Error*

Beavers's third argument is that the ALJ erred by not obtaining a consultative examination for Beavers's physical claims of obesity, status-post bilateral knee obstruction, bilateral plantar fasciitis, left thumb arthritis, history of brain tumor, diabetes, hypertension, anemia, and dyslipidemia.  (Doc. #11 at 12).  As the Commissioner correctly notes, "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).  An ALJ's duty to conduct a full inquiry for purposes of 20 C.F.R. § 416.1444 ("Administrative Law Judge Hearing Procedures – General") "does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." *Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 214 (6th Cir. 1986) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)) (emphasis in original).  Indeed, the language of § 416.1444 is discretionary and simply grants the ALJ the authority to refer a claimant to a consultative specialist if the ALJ determines that the existing medical record does not contain sufficient evidence for the ALJ to make the necessary determinations.  *Id.* (citing 20 C.F.R. § 416.917(a)).  The burden of providing a complete record, "defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Id.* (citing 20 C.F.R. §§ 416.912, 416.913(d)).  *Lee v. Comm'r of Soc. Sec.*, No. 18-CV-10018, 2019 WL 2051964, at *9 (E.D. Mich. Jan. 15, 2019), report and recommendation adopted, No. 18-10018, 2019 WL 1055352 (E.D. Mich. Mar. 6, 2019).

Here, the ALJ was not required to order a consulting examination because the record contains substantial medical and other evidence in the record supporting her findings.  The ALJ reviewed and considered over 700 pages of medical records.  While the record in this matter lacks

11

opinion evidence from her treating sources, it is the plaintiff's burden, and not the ALJ's, to "seek out a physician's medical opinion where one is not offered." *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Moreover, the ALJ evaluated state agency consultant Dr. Langham's opinion, but ultimately found Beavers to be more limited than Dr. Langham found her to be. (Tr. 33, Tr. 71-83). Particularly in light of the evidence discussed above, the ALJ could reasonably conclude that the evidence was sufficient to permit her to make a determination as to Beavers's claim without ordering a cumulative examination.

> *4. The ALJ Did Not Err When Considering Beavers's Previous Tax Preparation Work*

Fourth, Beavers argues that the ALJ should not have considered her previous work as a tax preparer, since it was "accommodated work" and consequently the ALJ should have "Gridded" out Beavers. (Doc. #11 at 14). Beavers does not cite any law in support of this argument. Consequently, she has waived this argument. *McPherson*, 125 F.3d at 995-96. But the argument lacks merit in any event.

Beavers testified that her former employer had allowed her use a chair "that would sink down, but kind of lean a little bit . . . to make it easy to get up, and down, and out of the chair." (Tr. 62). She also testified that after her former employer passed away, her new manager would not allow her to use the "special chair," and that as a result, she had to quit her job. (*Id.*). Beavers is correct that accommodated work is a factor to consider in determining whether a claimant can do past relevant work. *See* 20 C.F.R. § 404.1573(c) ("[i]f your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity"). But Beavers's brief testimony about an undefined "special chair" hardly overcome the ALJ's overall analysis.

First, if the claimant is performing "ordinary or simple tasks satisfactorily without more

supervision or assistance than is usually given other people doing similar work," it may be sufficient to show that she is working at "substantial gainful activity" levels.   20 C.F.R. § 404.1573(b); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) ("even work done in a sheltered workshop may show a claimant possesses "the necessary skills and ability to work at the substantial gainful activity level.").   Here, the evidence shows that Beavers's earnings level created a rebuttable presumption that she engaged in substantial gainful activity.   (Tr. 154-58); 20 C.F.R. § 404.1574(a), (b); *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996).   Indeed, Beavers never disputed that her tax preparation employment did not satisfy the income requirements to constitute "substantial gainful activity."   Second, Beavers does not point to any medical record where a doctor prescribed her any particular type of chair to use at work.   Nor has she shown why the very restrictive RFC adopted by the ALJ – which allows her to sit or stand at will – is insufficient to address her limitations.   Finally, Beavers had the burden to present evidence sufficient to rebut the presumption that her tax preparer wages constituted substantial gainful activity.   *See Bell*, 105 F.3d at 246.   Her brief, vague testimony about an undefined "special chair" does not suffice.

Accordingly, Beavers has not shown any error warranting remand related to this issue.

### 5. Beavers's Argument Regarding Step Five

Lastly, Beavers argues that the ALJ did not meet her burden at Step Five.   As the Commissioner points out, "[Beavers] is correct that had the ALJ reached step five of the sequential evaluation, she would have been disabled under the Medical Vocational Guidelines, Rule 201.06 . . .   The ALJ did not need to reach step five, however, because she properly found at step four that Plaintiff was capable of performing her past relevant work as a tax preparer, as she actually performed the job and as the job is generally performed in the national economy."   (Doc. #13 at

22 (internal citations omitted)).  If it is determined that the claimant is or is not disabled at a step

in the evaluation process, the evaluation will not go on to the next step.  20 C.F.R. §404.1520(a)(4).

However, since the Court has found that the ALJ did not err in her determination at Step Four, she

was not required to reach Step Five.  This argument, therefore, lacks merit.

  *6.  Additional Evidence Submitted to the Appeals Counsel*

  As set forth above, Beavers alleges that a letter from her counsel is not in the transcript.

(Doc. #11 at 7).  Although it is not entirely clear, it appears that Beavers is asking—without citing

to any supporting law—that the Court "remand this matter pursuant to . . . Sentence Six for further

proceedings, including but not limited to . . . complete review of all medical records, including

those of her amputation at the end of 2017."  (Doc. #11 at 3; *and see* Doc #11 at 8, 16).  The Court

finds that a Sentence Six remand is not appropriate.

  Remand to consider additional evidence is appropriate only when the evidence is new,

material, and good cause is shown as to why it was not presented at the prior proceeding.  *See* 42

U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).  It

is the claimant's burden to show that the new evidence meets these requirements.  *Allen v. Comm'r*

*of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009) (citing *Sizemore v. Sec'y of Health & Human Servs.*,

865 F.2d 709, 711 (6th Cir. 1988)).

  Evidence is "new" if it was "not in existence or available to the claimant at the time of the

administrative proceeding."  *Foster*, 279 F.3d at 353.  However, without going into detail about

each record, Beavers admits that the records reflect matters "subsequent to her date of last insured."

(Doc. #11 at 16).  Records of a medical condition that are dated after insurance cut-off can only

be considered to the extent they illuminate a claimant's health before that date.  *See Higgs v.*

*Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citing *Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th

Cir. 1985)).  Thus, the records are not "new" evidence because they reflect an amputation that

occurred in March 2018—approximately six months after her insured period ended.  (Tr. 13).

Even if the records Beavers provided to the Appeals Council are considered "new," she

has failed to demonstrate that these records are "material" and has failed to establish "good cause"

for her failure to submit these records sooner.  Courts have held that additional evidence is material

only if there is "a reasonable probability that the [Commissioner] would have reached a different

disposition of the disability claim if presented with the new evidence."  *Sizemore v. Sec'y of Health*

*& Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).  While it is most unfortunate that Beavers

ultimately required an amputation, the mere fact that she underwent such a severe procedure does

not mean that the evidence reflecting that procedure is "material" to the ALJ's decision.

Indeed, the ALJ already found that Beavers had a severe impairment of bilateral leg vein

obstruction, and provided for this in Beavers's RFC for a restricted range of sedentary work based

on the evidence that was in the record.  As noted above, *supra* at 8, those records constitute

substantial evidence in support of the ALJ's decision, and the fact that at later point in time Beavers

underwent an obviously serious and life-altering procedure does not negate the validity of the

ALJ's analysis with respect to the relevant time.  Thus, these new records are not "material" as

that term applies here.

Nor did Beavers satisfy the "good cause" requirement for a Sentence Six remand.  "Good

cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire

and present the evidence for inclusion in the hearing before the ALJ."  *Foster*, 279 F.3d at 357.

Further, "'[g]ood cause' is *not* established solely because the new evidence was not generated until

after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test."

*Richardson v. Comm'r of Soc. Sec.*, No. 11-12605, 2012 WL 4210619, at *4 (E.D. Mich. Aug. 27,

2012) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)) (emphasis in original). A claimant attempting to introduce new evidence "must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Id.* (internal citations omitted). Here, as the Commissioner notes, "[a]ll but two of the treatment notes, and certainly the evidence that Plaintiff underwent an amputation in late December 2017, was created prior to the Appeals Council's denial in April 2018." (Doc. #13 at 12). Beavers has not met the good cause requirement because she does not explain at all why she did not present the additional evidence to the Appeals Council. *Oliver*, 804 F.2d at 966. *Richardson* makes clear that this is insufficient to satisfy the good cause standard.

For all of these reasons, Beavers has not shown a reasonable probability that the ALJ would have reached a different conclusion on the issue of disability for the relevant period if presented with the proffered evidence, nor has Beavers established good cause for her failure to submit the evidence sooner. As such, she is not entitled to a Sentence Six remand.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Beavers's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.


Dated: June 19, 2019                                    s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                              United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 19, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager